## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LIFEVOXEL.AI INC., | ) | 3:23-CV-00534 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KISHORE MAMILLAPALLI, | ) | |
| *Defendant*. | ) | March 29, 2024 |

### RULING ON PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND/OR APPOINT AN ARBITRATOR

Sarala V. Nagala, United States District Judge.

In this action brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, Plaintiff LifeVoxel.AI Inc. ("LifeVoxel") alleges that Defendant Kishore Mamillapalli has failed to submit to arbitration in accordance with the parties' agreement. Currently before the Court is Plaintiff's motion to compel Defendant to arbitrate pursuant to 9 U.S.C. § 4, and to appoint an arbitrator pursuant to 9 U.S.C. § 5. Defendant opposes the motion.

For the reasons discussed herein, the Court GRANTS Plaintiff's motion insofar as it seeks to compel Defendant to arbitrate and DENIES Plaintiff's motion insofar as it seeks the appointment of an arbitrator.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is taken from the parties' pleadings, as well as their exhibits and briefing on Plaintiff's motion to compel arbitration.

LifeVoxel is a Delaware corporation with an address in Stamford, Connecticut. Compl., ECF No. 1 ¶ 2.[1] Defendant, who resides in California, is a former employee of LifeVoxel. *Id.* ¶¶

---

[1] Unless otherwise indicated, Defendant has admitted to the allegations cited in this section. *See generally* Answer, ECF No. 13. Because the answer does not set forth the text of the allegations, the Court cites to the complaint.

3–4.  While working for LifeVoxel, Defendant was at all times based in San Diego.  Answer Ex. A, Offer Letter and Employment Agreement, ECF No. 13-1 § 2.  Defendant argues that LifeVoxel operates its business in San Diego, and that its only connection to Connecticut is that its counsel resides in Connecticut.  Def.'s Opp. Br., ECF No. 17 ¶ 11.

Defendant was employed pursuant to an employment agreement.  Compl. ¶ 4; *see also* ECF No. 13-1.  The employment agreement provides that its "validity, interpretation, construction and performance . . . will be governed by the laws of Connecticut, without regard to its choice-of-law rules," and also includes an arbitration provision, which "shall be governed by the Federal Arbitration Act."  ECF No. 13-1 §§ 13, 14; *see also id.* at § 14(e) (providing that the "arbitration agreement shall be governed by and construed and enforced pursuant to the Federal Arbitration Act . . . and not individual state laws . . . .").  In relevant part, the arbitration provision provides:

> Employee and the Company agree that any and all disputes that may arise in connection with, arise out of or in any way broadly relate to this Agreement, or any dispute that relates in any way, in whole or in part, to Employee's hiring by, employment with or separation from the Company, or any other dispute by and between Employee, on the one hand, and the Company, its parent, subsidiary and affiliated corporations and entities, and each of their respective officers, directors, agents and employees, on the other hand, shall be submitted to binding arbitration before a neutral arbitrator.

*Id.* § 14(a).  It goes on to state that "[t]he Parties shall select a mutually agreeable arbitrator (who shall be a retired judge) from a list of arbitrators provided by JAMS, ADR Services, ACR, or Judicate West.  The arbitration shall take place in Fairfield County, Connecticut.  The arbitration shall be conducted in accordance with the American Arbitration Association Arbitration Rules & Mediation Procedures."  *Id.* § 14(d).

Plaintiff, and its parent company AI Visualize Inc., initiated arbitration proceedings against Defendant pursuant to the American Arbitration Association ("AAA") rules and procedures on December 17, 2022.  Compl. ¶ 10.  The allegations in the arbitration demand describe a fraught

history between the parties, and ultimately make claims against Defendant for breach of the implied covenant of good faith and fair dealing (including in the employment agreement), commercial disparagement and defamation, breach of fiduciary duties, tortious interference with contract and business expectancies, and civil conspiracy.  *See* Def.'s Opp. Br. Ex. 2, ECF No. 17-2 at 14–15.  The demand seeks a declaratory judgment "that [petitioners] are relieved from any future obligations or performances" under various agreements between the parties.  *Id.* at 14.

Right away, the parties disagreed about the proper arbitration procedure.  Defendant, who at the time was represented by counsel, contended that the provisions of the arbitration agreement were internally inconsistent, in that they required an arbitrator from one of four arbitration companies (JAMS, ADR Services, ACR, or Judicate West), but incorporated the rules of another arbitration company (AAA).  Compl. ¶¶ 11–12.  He also insisted that the arbitration take place in California, rather than Fairfield County, Connecticut, and provided only the name of one California arbitrator when asked which arbitrators he would consider.  *Id.* ¶¶ 13, 16.  When Plaintiff offered the names of four JAMS arbitrators based in New York City, Defendant did not respond, nor did he offer any other options.  *Id.* ¶¶ 19, 20.  Although the AAA case manager confirmed that AAA would allow an outside arbitrator to administer the arbitration, *see* Pl.'s Reply in Supp. of Mot. to Compel Arb. Ex. 1, ECF No. 18-1 at 1, further attempts to select an arbitrator were unsuccessful, and Defendant, who was then self-represented, continued to insist that the arbitration take place in California.  *Id.* ¶¶ 24, 25.

With the arbitration proceedings at a standstill, Plaintiff commenced the instant action by filing a petition to compel arbitration or appoint an arbitrator on April 27, 2023.  ECF No. 1. Defendant filed an opposition to the petition, ECF No. 11, and an answer, ECF No. 13.  Thereafter,

Plaintiff filed the instant motion to compel arbitration and/or appoint an arbitrator.  Pl.'s Mot. to Compel Arb., ECF No. 16.

## II.     LEGAL STANDARD

The FAA provides that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Section 4 of the FAA provides that a party aggrieved by another party's refusal to arbitrate may "petition any United States district court which . . . would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed," and section 5 allows the district court to appoint an arbitrator if the parties' agreement does not provide a method for doing so or a party has "fail[ed] to avail himself of such method."  9 U.S.C. §§ 4, 5.

The Supreme Court has repeatedly made clear that "the FAA was designed to promote arbitration" and that the act "embod[ies] [a] national policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (quoting, in part, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *see Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (noting that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983))).

Nonetheless, "despite the strong federal policy favoring arbitration, arbitration remains a creature of contract."  *Starke*, 913 F.3d at 288.  Thus, the FAA "places arbitration agreements upon the same footing as other contracts," but "it does not require parties to arbitrate when they have not agreed to do so."  *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (internal quotation marks and citations omitted).  As a result, "[i]n deciding whether a dispute is arbitrable, [a court] must answer two questions:  (1) whether the parties agreed to arbitrate, and, if so, (2)

whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (citation omitted).  The first question is "necessarily for the court and not the arbitrator," *Schnabel*, 697 F.3d at 118, and is governed by state law principles of contract formation, *Starke*, 913 F.3d at 288.

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment," which requires consideration of "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (cleaned up) (citations omitted).  The Court must draw all inferences in favor of the non-moving party. *Id.*

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

## III.   DISCUSSION

For the reasons described below, the Court finds that it has subject matter jurisdiction over this matter, and that the dispute between the parties must be arbitrated in accordance with their agreement.  However, the Court declines Plaintiff's request to appoint an arbitrator, without prejudice to renewal.

A.  <u>Subject Matter Jurisdiction</u>

The Court first addresses the threshold jurisdictional issue, and finds, after consideration of Plaintiff's response to its order to show cause, *see* ECF No. 21, that it has subject matter jurisdiction over this matter.

The Court has an independent obligation to assure itself of its jurisdiction, regardless of whether the issue is raised by the parties.  *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In assessing whether subject matter jurisdiction exists, a court may assess matters outside of the pleadings, *see id.*, and should "'constru[e] all ambiguities and draw[] all inferences' in a plaintiff's favor."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (quoting *Makarova*, 201 F.3d at 113).

Although Plaintiff's petition is brought pursuant to the Federal Arbitration Act, that statute does not independently confer jurisdiction, as it provides that an action brought under 9 U.S.C. § 4 may be brought in a court which, but for the arbitration agreement, "would have jurisdiction under title 28." 9 U.S.C. § 4; *see also Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (recognizing that the FAA "bestows no federal jurisdiction but rather requires . . . an independent jurisdictional basis") (citation omitted) (cleaned up).  Plaintiff alleges this Court has federal question jurisdiction because the "underlying arbitration concerns the theft and publication of confidential business information in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, *et seq.*" Compl. ¶ 5.  Because the arbitration demand does not invoke the Defend Trade Secrets Act

("DTSA"), *see* Def.'s Opp. Br. Ex. 2, Arbitration Demand, ECF No. 17-2 at 4–16, however, the Court ordered Plaintiff to show cause why its petition and its motion to compel should not be dismissed for lack of subject matter jurisdiction.  Order to Show Cause, ECF No. 20.

Plaintiff filed a timely response, *see* ECF No. 21, asserting that, although the DTSA is not mentioned in the arbitration demand, the "substantive conflict between the parties here involves the misappropriation of the Plaintiff's confidential and proprietary information by the Defendant." *Id.* at 7.  In other words, because the arbitration demand relates to and alleges facts which, Plaintiff contends, would state a claim under the DTSA, the arbitration demand "aris[es] under" the DTSA, conferring federal question jurisdiction upon this Court.  *See* 28 U.S.C. § 1331.

The Court finds that Plaintiff has satisfied its burden of establishing this Court's federal question jurisdiction.  Under the "well-pleaded complaint rule," a suit arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon federal law."  *Vaden*, 556 U.S. at 60 (citation omitted) (cleaned up).  Here, Plaintiff's petition clearly states that the underlying arbitration arises under the DTSA.  Compl. ¶ 5.

In addition, the Supreme Court has held that, in the context of petitions to compel arbitration brought pursuant to § 4, a court may "look through" to the underlying action between the parties (here, the arbitration) in order to ascertain whether the Court would have jurisdiction over the "substantive conflict" between the parties.  *Vaden*, 556 U.S. at 62–63; *see also Giusti v. Morgan Stanley Smith Barney, LLC*, 581 F. App'x 34, 35 (2d Cir. 2014) (summary order) (looking through, in the context of petition to vacate arbitral award, to arbitration demand).  The arbitration demand includes allegations that Defendant threatened to, and did, distribute "confidential and proprietary information" in an effort to advance his own interests and harm Plaintiff.  ECF No. 17-2 ¶¶ 52, 62, 64.  In addition to contract and tort causes of action, the demand brings a count for

civil conspiracy, of which one act in furtherance was the "publication of confidential and proprietary information." *Id.* ¶¶ 73–79.  While the Court expresses no view on whether these allegations would be sufficient to prevail on a claim for a violation of the DTSA or to survive a motion to dismiss, Plaintiff has sufficiently demonstrated to this Court that these allegations invoke a potential DTSA violation, for the purposes of ascertaining its jurisdiction.  The DTSA creates a private right of action for an "owner of a trade secret that is misappropriated," and defines both "misappropriation" and "trade secret" quite broadly, to include disclosure of "all forms and types financial, business, scientific, technical, economic, or engineering information" by a person who knew or had reason to know the information was acquired under circumstances giving rise to a duty to maintain its secrecy.  18 U.S.C. §§ 1836(b)(1), 1839; *see also ML Fashion, LLC v. Nobelle GW, LLC*, No. 3:21-CV-00499 (JCH), 2022 WL 313965, at *20 (D. Conn. Feb. 2, 2022) (recognizing the definition of "trade secret" is "quite expansive").  In light of these broad standards and the allegations of the arbitration demand filed by Plaintiff, which address a purported misappropriation of confidential information, the Court finds Plaintiff has sufficiently invoked the DTSA for purposes of establishing its jurisdiction to rule on the petition to compel arbitration.

This conclusion is not undermined by the fact that Plaintiff did not specifically mention the DTSA in its arbitration demand.  As Plaintiff notes, reference to a specific statutory section is generally not required by the AAA Rules.  *See* Pl.'s Mot. to Compel Arb. App. 2, ECF No. 16-1, Employment Arbitration Rules and Mediation Procedures, at 19–20, Rules 4(b)(i)(1) and 4(c) (requiring a party to set forth a "brief statement of the nature of the dispute" but not subjecting filings to "technical pleading requirements"); *see also Nadeau v. Equity Residential Properties Management Corp.*, 251 F. Supp. 3d 637, 642 (S.D.N.Y. 2017) (recognizing that "arbitration demands are not subject to formalistic requirements, nor are they comparable to pleadings in

federal court"). The Supreme Court has held as much for federal civil complaints, as well. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (reversing lower court's dismissal based on failure to invoke § 1983 because the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); *see also Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss.").

In sum, the Court finds it has subject matter jurisdiction over this matter, and proceeds to assess the merits of Plaintiff's motion to compel arbitration.[2]

### B. Agreement to Arbitrate

Next, the Court turns to whether an agreement to arbitrate exists between the parties. This question is generally governed by state law principles of contract formation. *Starke*, 913 F.3d at 288. Thus, the Court first addresses what law to apply.

Although the parties' employment agreement contains two choice of law provisions, one selecting Connecticut law and one selecting federal arbitration law, applying those choice of law provisions "to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Schnabel*, 697 F.3d at 119. Defendant asserts that California law applies. Here, the Court need not wade into the choice of law issue—

---

[2] Defendant does not challenge this Court's personal jurisdiction over him, thereby waiving this defense. *See* Fed. R. Civ. P. 12(h)(1)(B). Defendant does, however, deny that this Court is the proper venue for this action. *See* Compl. ¶ 6; Answer ¶ 6. Regardless, as the Court holds that the arbitration agreement between the parties is valid, this is sufficient to establish both personal jurisdiction and venue over Defendant in this Court. *See Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction."); *Doctor's Assocs., LLC v. Reino*, No. 3:22-CV-00786 (JCH), 2023 WL 2687529, at *8 (D. Conn. Mar. 28, 2023) ("There is a 'long-standing principle that a party who agrees to arbitrate in a state (such as Connecticut) in which the FAA makes arbitration agreements enforceable also consents to jurisdiction in whatever court could compel arbitration in that state.'") (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997)).

as the Second Circuit has recognized, "both Connecticut and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." *See id.* Under either state's laws, the "touchstone of the inquiry . . . is the parties' outward manifestations of assent." *See id.* (citing, among other authorities, *Chicago Title Ins. Co. v. AMZ Ins. Servs., Inc.,* 188 Cal. App. 4th 401, 422 (2010), and *Ubysz v. DiPietro*, 185 Conn. 47, 51 (1981)).

Here, the parties agree that Defendant's employment was pursuant to the employment agreement, *see* Compl. ¶ 4, which contains the arbitration agreement. Defendant signed the agreement, below the message stating that signing and returning the agreement would "signify your acceptance of this Offer and Agreement." ECF No. 13-1 at 7. In addition, Defendant specifically initialed below the arbitration provision. *See id.* at 5. This is sufficient evidence of mutual assent, under either state's law. *See, e.g.*, *Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (2020) ("Martinez does not dispute he signed the agreement. He is, therefore, deemed to have assented to all its terms."); *Bender v. Bender*, 292 Conn. 696, 729 (2009) (finding "strong evidence" of mutual assent where defendants signed and initialed in multiple places).

Almost in passing, Defendant suggests that the agreement between the parties is invalid because he "had to sign the arbitration agreement too quickly," and Plaintiff "got [his] signatures under huge pressure" to "get signed immediately." ECF No. 17 ¶ 8 (citing Def.'s Opp. Br. Ex. 4, ECF No. 17-5 at 2 (transmitting employment agreement and stating in cover email "Please sign the attached and send them back. . . .")). It is not clear whether Defendant's challenge is to the arbitration provision only, or to the employment agreement as a whole, as he addresses both in the same paragraph. *See id.* (referencing both the hurried signing of the "arbitration agreement" and the "employment contract").

To the extent Plaintiff's filing, when liberally construed, raises a challenge to the validity of the arbitration agreement on grounds of unconscionability, it is rejected.[3]  First, under either California or Connecticut law, Defendant would need to raise both procedural and substantive unconscionability in order for a contract to be struck down as unconscionable—here, at best, he has raised procedural issues alone.  *See McKellar v. Mithril Cap. Mgmt. LLC*, No. 19-CV-07314-CRB, 2020 WL 1233855, at *4–5 (N.D. Cal. Mar. 13, 2020); *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 327 (D. Conn. 2011) (citing *Bender*, 292 Conn. at 732).  In any event, he has not demonstrated procedural unconscionability.  As support for his assertion, Defendant has submitted only the email transmitting the agreement which does not, on its face, support Defendant's assertion he had little time to sign; even if it did, it does not demonstrate that Defendant was the victim of any sort of unfair surprise.  *See McKellar*, 2020 WL 1233855, at *4, *5 (finding allegations "established at most a minor degree of procedural unconscionability" where plaintiff alleged she had "less than an hour to review the agreements, near midnight . . . without legal representation"); *Bender*, 292 Conn. at 733 (upholding trial court's finding that party had not demonstrated duress or procedural unconscionability where he had only offered testimony that he felt "pressured" to sign agreement).

Having determined that the parties "have agreed to and are bound by" the arbitration agreement, *see Schnabel*, 697 F.3d at 119, the Court applies the parties' choice of law therein—here, Connecticut law and the Federal Arbitration Act—to determine its enforceability.  *See*

---

[3] To the extent Defendant challenges the agreement as a whole, this is an issue for an arbitrator, and not the Court, to decide.  *See Buckeye*, 546 U.S. at 445–46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *see also Davis v. Dynata*, LLC, No. 3:22-CV-1062 (SVN), 2023 WL 6216809, at *13 (D. Conn. Sept. 25, 2023) (leaving allegations of "fraud and duress" concerning the agreement as a whole to the arbitrator); *Castle Hill Imports, LLC v. Schlossberg Textil AG*, No. 3:16-CV-1272(AWT), 2017 WL 11559153, at *12 (D. Conn. Sept. 25, 2017) (same).

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004) (applying choice of law clause to evaluate arbitration agreement).

### C. Enforceability of the Arbitration Agreement

Defendant's opposition primarily challenges the enforceability of the arbitration agreement.  As a threshold matter, Defendant contends that any questions of arbitrability are for the Court to decide, not the arbitrator.  Defendant then raises several other arguments:  (1) pursuant to California Labor Code § 925, the provision of the arbitration agreement requiring the arbitration to occur in Connecticut must be voided and is unlawful; (2) the claims brought against him in arbitration are beyond the scope of the agreement, and because the agreement does not permit arbitration before the AAA, the proceeding initiated by Plaintiff violates the agreement; and (3) Plaintiff has waived its right to arbitrate by filing other claims against Defendant in court.[4]  The Court first addresses the arbitrability argument.  Because it finds the parties clearly delegated these issues to the arbitrator, the Court ultimately does not address the merits of Defendant's other arguments.

#### 1. Delegation

The Supreme Court has recognized that, through a "delegation provision," parties can "agree to arbitrate 'gateway' questions of 'arbitrability.'"  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citations omitted).  Though these "questions of arbitrability" are "presumptively for a court, rather than an arbitrator, to decide," this presumption can be overcome by "clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended [to delegate] the question of arbitrability" to an arbitrator.  *Wells*

---

[4] Defendant also makes a number of arguments that appear to go to the merits of the underlying arbitration dispute. *See, e.g.*, ECF No. 17 ¶¶ 13 (describing why he was fired), 14 (describing Plaintiff's allegedly false accusations), 20 (providing evidence for his version of events), 22–23 (describing founder of Plaintiff as running a Ponzi scheme). Because the Court compels arbitration, it does not address these arguments.

*Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 394, 395 (2d Cir. 2018) (internal quotation marks and citation omitted). Under Connecticut law, which also follows the "clear and unmistakable" test, "the intention to have arbitrability solely determined by an arbitrator 'can be manifested . . . through the use of broad terms to describe the scope of arbitration, such as all questions in dispute and all claims arising out of the contract." *City of New Britain v. AFSCME, Council 4, Loc. 1186*, 304 Conn. 639, 648 (2012) (citation omitted). The Second Circuit has also held that when parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Wells Fargo*, 884 F.3d at 396 (citation omitted).

Here, the arbitration agreement includes very broad language designating "any and all disputes" arising out of the agreement, or the employment itself, as arbitrable disputes. ECF No. 13-1 § 14(a). In addition, the agreement incorporates by reference the AAA rules, by providing that all arbitrations will be conducted in accordance with AAA rules. *Id.* § 14(d). These rules provide that an arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." ECF No. 16-1 at 20, Rule 6(a). This is textbook "clear and unmistakable evidence from the arbitration agreement . . . that the parties intended [to delegate] the question of arbitrability" to an arbitrator. *See Wells Fargo*, 884 F.3d at 395 (internal quotation marks and citation omitted).

Defendant contends that the arbitration clause is internally inconsistent—in that it provides that arbitrators shall be selected from four organizations but the rules of a fifth shall be applied, and that arbitration will occur in Connecticut despite that none of the organizations have Connecticut offices, *see* ECF No. 13-1 § 14(d)—such that it cannot be a "clear and unmistakable" delegation. *See* ECF No. 17 ¶¶ 4, 5. However, nothing Defendant points to demonstrates an

internal inconsistency. First of all, Plaintiff has provided evidence that AAA is able to administer an arbitration according to its rules regardless of whether the arbitrator is also selected from the AAA. ECF No. 18-1 at 1. In addition, it does not appear to be a prerequisite to arbitrating with the AAA that the arbitration occur in a location where the organization has an office. *See, e.g.*, ECF No. 16-1 at 22 Rule 10 (noting that arbitrators can "determine the place of arbitration," and defining "locale" as "city, county, state, territory, and/or country of the Arbitration"). Thus, none of the "inconsistencies" pointed to by Defendant undermine the broad delegation clause, which clearly and unmistakably delegates questions of arbitrability to the arbitrator.

## 2. *California Labor Code § 925 and Arbitration Location*

Defendant's primary argument is that the arbitration must occur in California, despite the language of the agreement, because to do otherwise would violate California Labor Code § 925. This statute provides that an employer "shall not require an employee who primarily resides and works in California . . . to agree to a provision that would" require the employee to arbitrate "outside of California a claim arising in California," or "[d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California." Cal. Lab. Code § 925(a). It further provides that any provision doing so is "voidable by the employee," and, once voided, the matter at issue "shall be adjudicated in California and California law shall govern the dispute." *Id.* § 925(b). Because Defendant is a citizen of California who resides in and performed his work for Plaintiff in California (which Plaintiff does not dispute), Defendant contends he is entitled to the protection of this section. Further, he contends that the question of whether he can be compelled to arbitrate in Connecticut must be decided by this Court. For its part, Plaintiff contends that the application of this section is a matter for the arbitrator, and not the Court, to decide.

Although the Second Circuit has not addressed the question of whether the applicability of section 925 is a question of arbitrability that can be delegated to the arbitrator, at least one court in this circuit has concluded that it can be, as it is a question of the forum provision's enforceability. *Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 617–18 (S.D.N.Y. 2020); *see also Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 90–91 (S.D.N.Y. 2021) (finding that, if New York law applied to contract, section 925 would "not come into the picture at all"); *Dentons US LLP v. Zhang*, 211 A.D.3d 631, 632 (N.Y. App. Div. 2022) (finding that issue of applicability of section 925 to agreement which stipulated New York or Chicago for the arbitration location had been delegated to arbitrator). *Pacelli* followed the holdings in two California cases, which came to the same conclusion. *See Smith v. Nerium Int'l, LLC*, No. SACV 18-01088JVS(PLAx), 2019 WL 7195330, at *4 (C.D. Cal. Sept. 10, 2019) ("[T]he Court finds that [plaintiffs'] arguments regarding the applicability of [section 925] are properly addressed by the arbitrator, not the Court."); *Ratajesak v. New Prime, Inc.*, No. SA CV 18-9396-DOC (AGRx), 2019 WL 1771659, at *6 (C.D. Cal. Mar. 20, 2019) (recognizing that, while Plaintiff's arguments "regarding . . . the application of [section 925] . . . may well render the claims unarbitrable," that question was clearly and unmistakably delegated to the arbitrator); *see also Zhang v. Superior Ct. of Los Angeles Cnty.*, 85 Cal. App. 5th 167, 175 (2022), *reh'g denied* (Nov. 18, 2022*)* (recognizing section 925 as a question of arbitrability and that New York arbitrator could decide its application). Although there appears to be some dispute among California courts, *cf., e.g.*, *McKellar*, 2020 WL 1233855, at *6, the Court agrees with those courts in this circuit and elsewhere that have determined that the application of section 925 is a question of arbitrability. *See also UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 655 (2d Cir. 2011) (holding that an arbitration forum selection clause raises a "presumptively arbitrable procedural question[]"). Because here, questions of arbitrability

have been clearly delegated to the arbitrator, the Court finds it need not decide section 925's application to this case. Defendant remains free to raise this argument in arbitration.[5]

### 3.  Scope of Arbitration Agreement and Arbitral Forum

Likewise, the Court need not decide whether Plaintiff's arbitration demand is entirely within the scope of the parties' agreement, whether Plaintiff's parent company is a proper party to the arbitration, or whether the AAA is the proper arbitral forum, as these questions, too, have been delegated to the arbitrator by the delegation clause. Defendant argues that he is "not sure this arbitration actually arises out of [his] employment," because the majority of allegations in the arbitration demand relate to events before or after his employment, *see* ECF No. 17 ¶ 9. He also argues that LifeVoxel's parent is not a proper party to the arbitration because he has no agreement with it, *id.* at 2–3, and that because the agreement requires an arbitrator to be selected from an organization other than AAA, the arbitration cannot take place before the AAA, *see id.* ¶ 2.

The Second Circuit has recognized that a broad arbitration clause can "clearly and unmistakably evidence[] the parties' intention to have the arbitrator determine its scope," including whether its language "reaches" all of the claims sought to be arbitrated. *See Bell v. Cendant Corp.*, 293 F.3d 563, 567–68 (2d Cir. 2002). Here, the arbitration clause not only incorporates the AAA rules (which leave questions of arbitrability, including an agreement's scope, to the arbitrator), but also by its terms provides that all manner of claims, beyond those limited to the employment agreement itself, must be arbitrated. *See* ECF No. 13-1 § 14(a). As previously discussed, the Court finds this broad clause sufficient to clearly evidence the parties' intent to delegate questions

---

[5] The Court notes that, based on an email submitted by Plaintiff, the parties at one point discussed the option of Defendant "participat[ing] remotely from California." *See* Compl. Ex. G, ECF No. 1 at 19. Although the Court leaves these issues to the arbitrator, the Court encourages the parties to continue to explore options like this one, given Defendant's understandable frustration with being required to travel to Connecticut, a state which, based on his contentions, has no connection whatsoever to his employment.

of arbitrability to the arbitrator.  *See City of New Britain*, 304 Conn. at 648.  Defendant's arguments—about the scope of the arbitration agreement, whether Plaintiff's parent company is a proper party to the arbitration, and whether the AAA is the proper forum—all raise questions of arbitrability; thus, they are for the arbitrator, and not this Court, to decide.  *See UBS*, 660 F.3d at 655 (holding that an arbitration forum selection clause raises a "presumptively arbitrable procedural question[]"); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 211 (2d Cir. 2005) (holding that question of party's right to enforce the arbitration agreement was a question of arbitrability that needed to be arbitrated); *Considine v. Brookdale Senior Living, Inc.*, 124 F. Supp. 3d 83, 91 (D. Conn. 2015) ("Because the parties have delegated the issue of arbitrability to an arbitrator, the Court can say no more on this matter.").

### 4. Waiver

Last, Defendant argues that Plaintiff has waived its right to arbitrate because it has already sued Defendant in San Diego "as part of a 'workplace harassment' action."  ECF No. 17 at 4; *id.* at ¶ 18.

Ordinarily, "a defense of waiver brought in opposition to a motion to compel arbitration . . . is a matter to be decided by the arbitrator."  *See Bell*, 293 F.3d at 569 (citing *S&R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82–83 (2d Cir.1998)).  However, a district court can properly decide the question of waiver where a party has "already participated in litigation *on the dispute*."  *Id.* at 569–70 (emphasis in original) (citation omitted) (finding district court properly left waiver issue for the arbitrator where action and arbitration "pertain[ed] to entirely different facts").

Here, the evidence submitted does not support a finding that LifeVoxel participated in litigation based on the same facts as the arbitration.  The same parties were involved, as it was also

LifeVoxel who instituted the San Diego action seeking a restraining order against Defendant. *See* Def.'s Opp. Br. Ex. 3A, ECF No. 17-4 at 2. Though the action was ultimately dismissed, *see id.*, a temporary restraining order was issued to protect certain employees of LifeVoxel. *See id.* at Ex. 3, ECF No. 17-3 at 2. This action is mentioned in the arbitration demand, as well, though it is not clear exactly which allegations from the arbitration demand pertain to the San Diego action. *See* ECF No. 17-2 ¶¶ 44–47. Thus, there is clearly some overlap between the two actions. However, based on the evidence presented to the Court, it appears unlikely that the San Diego action was on the same dispute as the arbitration, as the TRO appears to have been based on an allegedly emergent situation in which LifeVoxel sought to assure the physical safety of its employees. *See* ECF No. 17-3; ECF No. 17-2 ¶¶ 38–47. By contrast, the arbitration relates to harm primarily to LifeVoxel itself—namely, alleged violations of various agreements, including a litigation funding agreement, two stock purchase agreements, an ancillary agreement, and the employment agreement between Plaintiff and Defendant, including its confidentiality and disparagement provisions. In addition, the arbitration demand seeks damages, not the limited injunctive relief that seems to have been sought in the San Diego action. Despite overlap in the parties and some of the allegations, as the two actions are distinct, the Court finds the question of whether the filing of the San Diego action waived Plaintiff's opportunity to arbitrate is also one that should be left to the arbitrator. *See Bell*, 293 F.3d at 569.

In sum, there exists a valid arbitration agreement between the parties which requires Defendant to submit to the arbitration filed by Plaintiff, and to raise his arguments against arbitration before the arbitrator. As Defendant has thus far failed to comply with his obligation to arbitrate, Plaintiff's motion to compel Defendant to arbitrate is GRANTED.

D.  Appointment of an Arbitrator

Under 9 U.S.C. § 5, this Court has the authority to appoint an arbitrator if a party has "fail[ed] to avail himself of" the method for appointment provided by the agreement, or there has otherwise been a "lapse" in the naming of the arbitrator.

Plaintiff devotes none of its briefing to its request for the appointment of an arbitrator, nor does it provide the Court with any candidates to consider.  Nonetheless, it appears clear that here, Defendant failed to avail himself of the selection method provided by the agreement by refusing to select an arbitrator from JAMS, ADR Services, ARC, or Judicate West, even when Plaintiff provided options.  However, given that the Court has now compelled Defendant to submit to arbitration before the AAA, the Court will permit the parties another opportunity to select a "mutually agreeable arbitrator," per their agreement.  *See* ECF No. 13-1 § 14(d).  Thus, the Court will at this time deny, without prejudice to renewal, Plaintiff's motion insofar as it seeks the appointment of an arbitrator.  Should Plaintiff renew its motion, it should provide the Court with specific arbitrators it would propose the Court appoint, as well as reasons why any particular arbitrator should be chosen, and Defendant will be given time to respond.  *See, e.g.*, *In re Arb. between Glacier Reinsurance AG & Odyssey Am. Reinsurance Corp.*, No. CIV. 3:07-CV-00583 (AWT), 2007 WL 1875658 (D. Conn. June 27, 2007) (appointing arbitrator from list of candidates provided).

IV.    CONCLUSION

For the reasons described herein, Plaintiff's motion to compel arbitration is GRANTED in part, insofar as Defendant is ordered to arbitrate in accordance with the agreement between the parties pursuant to 9 U.S.C. § 4, and DENIED in part, insofar as Plaintiff requests the appointment of an arbitrator pursuant to 9 U.S.C. § 5.  The denial of Plaintiff's motion to appoint an arbitrator

is without prejudice to renewal, should the parties require further Court intervention in this matter

and provide the Court with potential arbitrators.  As the relief sought from Plaintiff's petition has

been granted, the Clerk is directed to close this case.

**SO ORDERED** at Hartford, Connecticut, this 29th day of March, 2024.

  /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE